UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 07-23137-CIV-HUCK/BANDSTRA

LENORE S. RAVEN,
as surviving wife and beneficiary of
Alan Raven, deceased.

      Plaintiff,

v.

THE LINCOLN NATIONAL
LIFE INSURANCE COMPANY,
an Indiana Corporation,

      Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

This matter is before the Court on Defendant Lincoln National Life Insurance Company's Motion to Dismiss the Third Amended Complaint of Plaintiff Lenore Raven for failure to state a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6) ("Motion to Dismiss") (D.E. #51). For the reasons stated below, Defendant's Motion to Dismiss is DENIED with respect to each Count as circumscribed below.

**I.    BACKGROUND**

This is an action by Lenore S. Raven ("Raven"), as surviving wife and beneficiary of her late husband Alan Raven ("Insured"), against the Lincoln National Life Insurance Company ("Lincoln") seeking: (1) a declaratory judgment that Insured's insurance policy with Lincoln (policy number 20-7126894) (the "Second Contract"), including a Waiver of Premium Rider (the "Disability Rider"), did not lapse, is in full force and effect and that Raven is entitled to all benefits thereunder and other damages; and (2) to recover damages for breach of contract on account of (i) wrongful termination or lapse of coverage under the Second Contract, including the Disability Rider, and (ii) if the Disability Rider is determined not to be in effect, overcharges

for premiums attributable to the Disability Rider when it ceased to be in effect. In the alternative, Raven seeks damages for unjust enrichment and/or promissory estoppel.[1]

In March 1981, Insured contracted with Lincoln for the issuance of a "term" life insurance policy (policy number 64-4068509) (the "First Contract"), which included the Disability Rider. Such Disability Rider provided, in relevant part, that "[i]f Total Disability occurs [and is approved by Lincoln] . . . before age sixty-five, all premiums for this Policy becoming due in the two year period following the beginning of disability and while Total Disability continues will be waived." D.E. #50, Exh. A.[2] The Disability Rider also explicitly states that it "terminates . . . when the age of the Insured is sixty-five." *Id.* Insured was age 59 at the time he entered into the First Contract including the Disability Rider. Plaintiff observes that part of the premium for 1981 was specifically attributable to the Disability Rider in the amount of $436. *See Id.*

In October 1986, Insured converted the First Contract with Lincoln into the Second Contract, a new "universal" life insurance policy. The Second Contract includes a fill-in form to indicate insured-specific information. D.E. #50, Exh. B. Under the heading "Include the Following Riders," there are seven empty boxes from which the Insured could elect riders to

---

[1] Prior to Raven's Third Amended Complaint, Lincoln moved to strike and dismiss this action based on a class-wide settlement reached between Lincoln and the members of the putative class, including Raven, based on the *res judicata* findings pertaining thereto. D.E. #15 and #16. On February 29, 2008, this Court stayed this matter pending a determination by a court in Louisiana as to whether the class-wide settlement barred Raven's claims hereunder. D.E. #20. On appeal from the court's initial ruling, the Louisiana Appellate Court found that "[Raven's] claims as asserted in their Amended Complaint in the federal court in Florida are not altered by the Release contained in the Final Order and Judgment, and are therefore not barred by the doctrine of res judicata." D.E. #22-1. In addition, the Louisiana Appellate Court stated that "although [Lincoln] argues that some of the facts and circumstances of the federal action arose prior to the issuance of the Final Order [on May 17, 2011], we fail to find that the claims asserted are therefore barred by the terms of the Release and Waiver." *Id.* Yet, Lincoln, in its Reply Brief, asserts that "the Louisiana Appellate Court rules that . . . the allegations were limited to matters arising after the May 21, 2001 cut-off date." D.E. #53. This is a mischaracterization of the Louisiana Appellate Court's opinion. Since the Amended Complaint, like the Third Amended Complaint, contained facts and circumstances predating the May 17, 2011 order of the same nature, this Court finds that Lincoln's contention has no merit and that the allegations asserted under the Third Amended Complaint, including those arising before May 17, 2011, do not violate the Louisiana Appellate Court's Order.

[2] The Court notes that Pursuant to Federal Rule of Civil Procedure 10(c), "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

2

include.  One of the electable options was the Disability Rider.  A footnote accompanying such rider reads as follows:

> Include [the Disability Rider] if the existing policy(ies) now provides this benefit on the person to be the Insured under the new policy.  As an inducement for such inclusion, I (we) the undersigned, hereby represent that the Insured (a) is not now prevented by injury, sickness or physical condition from performing all duties of his/her regular occupation, (b) is not now receiving disability benefits of any kind, and/or (c) does not have any claim for disability benefits pending.  *Id.*

The Insured did not check the empty box next to the Disability Rider to affirmatively elect it nor did the Insured check any of the other boxes.  *See Id.*  Plaintiff alleges that, although the box was left unchecked, Lincoln's agent Yesner "represented to the Ravens that the [Disability Rider] would carry forward automatically under the Second Contract and that it was standard procedure to leave the box blank."  D.E. #50.  Insured was age 64 at the time he entered into the Second Contract.  Although requested from Lincoln, Plaintiff does not know, with respect to the Second Contract, what additional premium amount, if any, was attributable to the Disability Rider for 1986 or any subsequent year.  Unlike the First Contract, there is no indication in the Second Contract that a portion of the premium is attributable to the Disability Rider.  *See* D.E. #50, Exh. B. Plaintiff alleges that Insured was charged the same quarterly premiums before and after his 65th birthday.  D.E. #50.

In June 2002, fifteen years after the Insured turned 65, Raven allegedly reported to Lincoln's agent, Yesner, that her husband, the Insured, had suffered paralysis of the spine and was unequivocally disabled.  Raven also allegedly called Lincoln directly to notify the company of her husband's declining health and to reiterate[3] her husband's right under the Disability Rider to suspend premium payments under the Second Contract.  Over the next four years, Raven contacted Lincoln's agent Yesner many other times regarding her husband's declining health.  In October 2006, Raven allegedly spoke with Yesner for the last time and alleges "Yesner advised Raven that the Disability Rider was in effect."  *Id.*  Later that month, Raven alleges that she also spoke to an unnamed Lincoln representative about the same issue.  Raven alleges that "Lincoln's representative confirmed in that October 2006 telephone conversation to Raven that the

---

[3] Plaintiff did not claim that she asserted her husband's right under the Disability Rider in her June 2002 call to Yesner though she implies that she did by "reiterating" the same in her subsequent call to Lincoln.

3

Disability Rider was in effect and that based on the Insured's disability, he was not required to make any further premium payments under the Second Contract." *Id.* Allegedly, Raven and Insured, thereafter, in reliance on such statements, made no further premium payments under the Second Contract. Raven alleges that all required premium payments on the Second Contract had been made between October 1986 and August 2006 totaling $76,050.52. *Id.*

In June 2007, approximately eight months after the October 2006 phone call, Raven allegedly called Lincoln to check the status of the Second Contract. According to Raven, "[i]t was at that time that Raven was informed by a Lincoln representative for the first time that, unbeknownst to Raven, the Second Contract had lapsed, or had been cancelled in October 2006." *Id.* Later that same month, Raven allegedly sent Lincoln a demand for immediate reinstatement of the Second Contract which Lincoln refused. *Id.* In its Motion to Dismiss, Lincoln states that "the policy lapsed due to [Raven's] failure to pay the premiums." D.E. #51. Under the terms of the Second Contract, there is a provision regarding lapse that states, "[c]overage will end prior to the Maturity Date [in this case, October 4, 2017], if the premiums paid and interest credited are not sufficient to continue coverage to such date." D.E. #50, Exh. B. Separately, there is a termination provision that states the following:

> **Termination**: All coverage under this Policy will terminate when any one of the following occurs:
> 1. The grace period ends without payment of required premium, and the Policy is not being continued under the Death Benefit Guarantee Provision.
> 2. This Policy is surrendered.
> 3. The Insured dies.
> 4. This Policy matures. *Id.*

Another provision entitled "Grace Period" provides that, if there is an insufficiency in the policy's cash surrender value available to cover the policy's costs, as calculated through a number of formulas set forth in the passage below, Lincoln becomes obligated to mail notice of such insufficiency to the Owner so it can be cured before Lincoln can terminate the Second Contract:

> If the Net Cash Surrender Value on a Monthly Anniversary Day **is not sufficient to cover** the Cost of Insurance and the Monthly Administrative Charge for the month following such Monthly Anniversary Day and the Policy is not being continued under the Death Benefit Guarantee provision described below, a grace period of 61 days will

4

>be allowed for the payment of a premium sufficient to keep this Policy in force until the end of the grace period. . . . Notice of such premium will be mailed to the last known address of the Owner or any assignee of record. The notice will be mailed at least 30 days before the end of the grace period. If such premium is not paid within the grace period, all coverage under this Policy will terminate with no value at the end of the 61 day period (emphasis added). *Id.*

Raven implicitly invokes these provisions in her Response in Opposition by stating that "Lincoln . . . unilaterally cancelled the life insurance policy eight months earlier **without prior notice of default or right to cure**, thus breaching its agreement to continue the life insurance policy's benefits (emphasis added)." D.E. #52. On June 1, 2008, Insured died (D.E. #33).

In her Third Amended Complaint, Raven sets forth four counts against Lincoln: declaratory judgment, breach of contract, unjust enrichment and promissory estoppel.[4] Counts I and II are both premised on Lincoln's wrongful termination or allowance of lapse of the Second Contract without prior notice and "notwithstanding Lincoln's representations to her in October 2006 that no further premium payments under the Second Contract were required." In Count I, Raven seeks a declaratory judgment that the Second Contract, including the Disability Rider, did not lapse, is in full force and effect and that Raven is entitled to all benefits thereunder and other damages. In Count II, Raven seeks to recover damages for breach of contract on account of wrongful termination or lapse of coverage under the Second Contract, including the Disability Rider, and, if the Disability Rider is determined not to be in effect, Raven claims a breach of contract for overcharges for premiums attributable to the Disability Rider when it ceased to be in effect. In Count III, in the alternative, Raven seeks damages on the equitable theory of unjust enrichment based on Lincoln's acceptance of premium payments without paying the benefits due under the Second Contract, including the Disability Rider, and, if the Disability Rider is determined not to be in effect, based on overcharges for premiums attributable to the Disability Rider when it ceased to be in effect. In Count IV, in the alternative, Raven seeks damages on the equitable theory of promissory estoppel based on the representations of Lincoln's agents that caused Raven to stop making further premium payments on the Second Contract.

In its Motion to Dismiss, Lincoln contends that each of Raven's claims must be dismissed. Lincoln argues that all counts premised on the effectiveness of the Disability Rider

---

[4] In earlier complaints, Raven had also asserted causes of action for fraud in the inducement, bad faith dealing, misrepresentation, negligent performance of contract and violation of the Florida Unfair Insurance Trade Practices act. *See, e.g.,* D.E. #13.

5

must be dismissed as a matter of law because the plain language of the Disability Rider clearly establishes that it expired almost 15 years before the Insured allegedly became disabled. In addition, Lincoln claims Raven cannot rely on statements from Lincoln's representatives that directly contradict the plain language of the Disability Rider and that Raven had a duty to read and the learn the provisions of the Disability Rider. Lincoln also claims such representatives owed Raven no duties under law. Lincoln claims that Counts III and IV must be dismissed as a matter of law because equitable counts cannot form the basis of recovery when a remedy at law – a contract – exists between the parties.

Raven has filed a Response in Opposition to Lincoln's Motion to Dismiss (D.E. #52) and Lincoln has filed a Reply to Raven's Response (D.E. #53). Thus, the issues presented by the Motion to Dismiss are fully briefed and ripe for resolution.

## II.   LEGAL ANALYSIS

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting Fed. R. Civ. P. 8)). While a complaint does not need to set forth detailed factual allegations, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Accordingly, to survive Lincoln's Motion to Dismiss, Raven's Third Amended Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Pleading facts that are "merely consistent with" Lincoln's liability "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). For purposes of reviewing Lincoln's Motion to Dismiss, all well-pleaded facts in Raven's Third Amended Complaint and all reasonable inferences drawn from those facts are taken as true. *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994).

### a.   *The Effectiveness of the Disability Rider*

With respect to Counts I and II, before addressing the issue of wrongful termination or lapse under the Second Contract, the Court must first address whether the Disability Rider formed a part of the Second Contract at the time of the alleged wrongful termination or lapse and

would thereby be subject to Raven's requests for a declaratory judgment and breach of contract. The Disability Rider explicitly states that it "terminates . . . when the age of the Insured is sixty-five." Raven has a duty under Florida law to read and learn about such a provision and is deemed to have knowledge of such provision. *See Griffin Brothers Co. v. Mohammed*, 918 So.2d 425, 430-31 (Fla. 4th DCA 2006); *Silver v. CountryWide Home Loans Inc.*, 760 F.Supp.2d 1330, 1340 (S.D. Fla. 2011). Even accepting as true Raven's claim that the Disability Rider carried over from the First Contract to the Second Contract on account of the representations of Lincoln's agent and in spite of the fact that Insured failed to check the box electing such rider, the plain language of the Disability Rider indicates that it would have terminated, on its own terms, when Insured reached the age of sixty-five. Raven makes no allegation that the Insured was disabled prior to reaching the age of sixty-five. Moreover, given that the Second Contract explicitly requires binding changes to the Second Contract to be "in writing and . . . made by our President, Vice President, Secretary or Assistant Secretary" (the "Binding Change Provision"), it is plain that neither Yesner nor the unnamed Lincoln agent had the authority to orally reinstate the Disability Rider post-termination and extend its terms to cover a person becoming disabled after the age of sixty-five.[5] *See Citizens Property Ins. Corp. v. European Woodcraft & MICA Design Inc.*, 49 So.3d 774 (Fla. 4th DCA 2010) (Plaintiff was on inquiry notice on account of the express terms of the contract regarding the agent's limited authority to bind the insurance company even where the Plaintiff did not read the part of the contract explicitly limiting such authority). Since "the construction of the terms of an unambiguous contract is a question of law for the trial court," *Penn Am. Ins. Co. v. Florida Power & Light Co.*, 710 So.2d 597, 600 (Fla. 4th DCA 1998), *review denied*, 719 So.2d 892 (Fla. 1998) and the termination provision of the Disability Rider is unambiguous, this Court finds as a matter of law that the Disability Rider terminated, by its own terms, in 1987, and thus did not form a part of the Second Contract in 2006 at the time of the alleged wrongful termination or lapse. Moreover, neither Yesner nor the

---

[5] In Response, Raven asserts that the Binding Change Provision does not apply to the Disability Rider, but only to the Second Contract since it applies only to the "Policy" and not to the "Contract." The term Contract is defined to include the "Policy" and "any riders." Raven, however, failed to note that the Disability Rider itself has a provision that states "[t]his Rider is made a part of this Policy to which it is attached." This undermines Raven's argument since the Disability Rider is part of the Policy. Accordingly, the Binding Change Provision is applicable to the Disability Rider.

other unnamed Lincoln agent had the authority to make it part of the Second Contract and Raven had inquiry notice of this fact.

### b. *Wrongful Termination or Lapse (Counts I and II)*

While Lincoln urges this Court to dismiss Counts I and II in their entirety due to the legal ineffectiveness of the Disability Rider, the analysis of Counts I and II does not end here. Accepting Raven's well-pleaded facts as true, we must ask whether, in October 2006, Lincoln wrongfully terminated the Second Contract (not including the Disability Rider) or impermissibly allowed it to lapse in violation of the Second Contract. To state a claim for breach of contract, a Plaintiff must plead three elements: (1) a valid contract; (2) a material breach; and (3) damages. *J.J. Gumberg Co. v. Janis Servs., Inc.*, 847 So.2d 1048, 1049 (Fla. 4th DCA 2003). On the first prong, Raven has stated that it is undisputed by the parties that the Second Contract was a valid contract. D.E. #52, p. 12. On the second prong, Raven stated in its Third Amended Complaint that Lincoln notified it of the Second Contract's lapse "for the first time" approximately eight months after the lapse had occurred. The Second Contract, however, requires, by its express terms, notice of an insufficient premium to be mailed to the Owner at least 30 days before the end of a 61 day grace period. It then provides that "[i]f such premium is not paid within the grace period, all coverage under this Policy will terminate with no value at the end of the 61 day period." In alleging that Lincoln notified Raven of the lapse for the first time after the lapse occurred, it can be reasonably inferred that Lincoln never mailed notice to Raven that her premium payments were insufficient and would need to be cured. Accepting this inference as true, Raven has plausibly alleged a "material breach" to the extent that Lincoln terminated the Second Contract or allowed it to lapse without first complying with the Second Contract's notice of default or right to cure provisions. This would shift the burden to Lincoln in the next stage of the litigation to prove that such notice was mailed at least 30 days before the end of the grace period. On the third prong, even setting aside the claimed loss of disability benefits under the Disability Rider, Raven sufficiently pleads facts alleging damages under the Second Contract arising from the loss of death benefits (as opposed to disability benefits) upon the death of the Insured which subsequently occurred. Since Raven has alleged sufficient facts with respect to wrongful termination or lapse that are plausible on their face from which the Court can reasonably infer that the Second Contract would have been effective until the death of the

Insured but for Lincoln's alleged failure to provide notice of insufficient premiums and that Lincoln may be liable for wrongful termination or lapse in violation of the express terms of the Second Contract (not including the Disability Rider), Raven's Counts I and II are sufficient to survive Lincoln's Motion to Dismiss insofar as they are premised on Raven's claims of wrongful termination or lapse under the Second Contract and do not depend on the legal effectiveness of the Disability Rider.

### c. *Premium Overcharges (Count II)*

Raven also claims under Count II a breach of contract from premium overcharges attributable to the Disability Rider when it ceased to be in effect. As noted above, this Court has determined that the Disability Rider terminated upon the Insured's 65th birthday and therefore has been ineffective since at least that time. We nonetheless did not address above whether the Disability Rider was effective as part of the Second Contract from the time of the Insured's execution of the Second Contract on October 4, 1986, when Insured was age 64, until the time that the Disability Rider terminated on its own terms when the Insured turned the age of 65.[6] For purposes of this Motion to Dismiss, we accept as true that the Disability Rider was an effective part of the Second Contract from the date of execution of the Second Contract until Insured turned age 65, even though Insured failed to check the box electing such rider, based on Raven's allegation that Lincoln's agent Yesner "represented to the Ravens that the [Disability Rider] would carry forward automatically under the Second Contract and that it was standard procedure to leave the box blank." We also accept Raven's claim as true that Insured was charged the same quarterly premiums both before and after his 65th birthday. These allegations suggest one of two possible inferences: either (1) the Disability Rider carried over, as we assume for purposes of this Motion to Dismiss, and Lincoln failed to reduce the overall amount of the premium by the amount associated with the Disability Rider after Raven's 65th birthday or (2) the Disability Rider did not carry over and therefore Lincoln would have had no reason to reduce

---

[6] Raven states that Insured turned age 65 on April 19, 1987. However, "age sixty-five" is defined by the Disability Rider to mean "the policy anniversary nearest the Insured's . . . sixty-fifth birthday." Since March 5 was the policy anniversary of the First Contract, Insured turned age 65 for purposes of the First Contract on March 5, 1987. Assuming *arguendo* that the same Disability Rider became a part of the Second Contract, it would have expired on October 4, 1987 since such new policy anniversary is closer to Insured's sixty-fifth birthday than October 4, 1986.

the overall amount of the premium by any such amount attributable to the Disability Rider. Based on the former inference, which is reasonable on our assumptions, Raven could state a claim for breach of contract from premium overcharges attributable to the Disability Rider when it ceased to be in effect because Raven has alleged all three elements of breach of contract as discussed above. On the first prong, Raven has alleged that the Second Contract (including the Disability Rider during this period) was a valid contract. On the second prong, Raven's allegation that Insured was charged the same quarterly premiums before and after his 65th birthday shows a material breach by suggesting that Lincoln continued to charge Insured for the benefit of the Disability Rider even after such benefit terminated. On the third prong, Raven alleges damages arising from such alleged overcharges. At this stage of the litigation, we do not consider Lincoln's claim that "Plaintiff was never charged for the [Disability Rider]."[7]  D.E. #52. Accordingly, this Court DENIES Lincoln's Motion to Dismiss with respect to Raven's Counts I and II as circumscribed above.

### d. Unjust Enrichment (Counts III)

In the alternative, Raven seeks damages on the equitable theory of unjust enrichment based on Lincoln's acceptance of premium payments under the Second Contract without paying the benefits due under the Second Contract, including the Disability Rider, and, if the Disability Rider is determined not to be in effect, based on overcharges for premiums attributable to the Disability Rider when it ceased to be in effect. To state a claim for unjust enrichment, a plaintiff must plead: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it. *See Della Ratta v. Della Ratta, 927 So.2d 1055* (Fla. 4th DCA 2006).

---

[7] We observe, however, that Lincoln does not appear to dispute that the Disability Rider became a part of the Second Contract between the Second Contract's execution and its termination upon Insured becoming age 65 since Lincoln repeatedly asserts that the "[Disability] Rider expired in 1987 at the age of 65." Had the Disability Rider never become a part of the Second Contract, the Disability Rider would have terminated upon the conversion of the First Contract into the Second Contract in October 1986. Lincoln has not raised this possibility so we do not consider at this time whether the plain language of the Second Contract compels us to find that the Disability Rider never became a part of the Second Contract.

As a threshold matter, "under Florida law, the general rule is that if the complaint on its face shows that adequate legal remedies exist, equitable remedies are not available." *Williams v. Bear Stearns & Co.*, 725 So.2d 397, 400 (Fla. 5th DCA 1998). "It is only upon a showing that an express contract exists that the unjust enrichment or promissory estoppel count fails (internal citations omitted)." *Id.* "Until an express contract is proven, a motion to dismiss a claim for promissory estoppel or unjust enrichment on these grounds is premature." *Id.*

In a recent case cited by Lincoln, *D.H.G. Properties, LLC v. the Ginn Companies, LLC*, 2010 WL 5584464 (M.D. Fla. Sept. 28, 2010), it was found that granting a dismissal of a claim of unjust enrichment under this standard was not premature where there was no dispute that a contract existed between the parties and such express contract formed part of the unjust enrichment claim itself. *See Id.* *11 and FN. 28. *See also Rushing v. Wells Fargo Bank, N.A.*, 752 F. Supp. 2d 1254 (M.D. Fla. Nov. 8, 2010) ("The County's reliance on *Williams v. Bear Stearns & Co.* [for the proposition that a motion to dismiss an unjust enrichment claim is premature] is misplaced, because in that case the plaintiff did not have a contract with some of the defendants. In contrast, Wachovia and the County have a contractual relationship based on the Agreement and the Wachovia Guidelines, both of which are attached to the Complaint. Therefore, because Wachovia and the County were governed by an express contract covering the same subject matter as the unjust enrichment claim, the unjust enrichment claim is dismissed (internal citations omitted))." By contrast, in each of the cases cited by Raven where a motion to dismiss the equitable claim was denied, there was a dispute as the existence of an express contract or no express contract was alleged. *See Manicini Enterprises, Inc. v. American Exp. Co.*, 236 F.R.D. 695, 696-97 (S.D. Fla. 2006) ("the Court finds that Plaintiff should be permitted to plead alternative equitable claims for relief as the existence of express contracts between the Parties has yet to be proven (internal citations omitted). However, if the alleged invoices are found to constitute express contracts at a later juncture then Plaintiff's unjust enrichment and quantum meruit claims will be dismissed at that time."); *Della Ratta v. Della Ratta, 927 So.2d 1055* (Fla. 4th DCA 2006) (no express contract alleged where appellees orally promised plaintiff a conveyance of land that was subsequently revoked); *Hillman Const. Corp. v. Wainer*, 636 So.2d 576 (Fla. 4th DCA 1994) (no express contract alleged between contractor and owner where tenant went bankrupt and could not pay contractor for improvements to owner's real estate).

In the instant case, Lincoln argues that since there is no dispute that a contract for insurance once existed between the parties and because the equitable counts rely upon the express contract, the analysis of Raven's equitable claims must be controlled by the language of the contract itself. *See* D.E. #51 and #53. In response, Raven argues that its unjust enrichment claim is viable because it is entitled to plead alternative or inconsistent theories under Fed. R. Civ. Pro. 8(e)(2) and has stated the elements of the claim. D.E. #52. While the Second Contract is not disputed, there is not proof that the Disability Rider was effective between the execution of the Second Contract and its termination. Accepting as true the inference that a portion of Raven's ongoing premium was attributable to the Disability Rider after it terminated, then Raven has plead the elements of unjust enrichment: (1) Raven conferred a benefit on Lincoln in the form of overpayments; (2) Lincoln has knowledge of the benefit; (3) Lincoln accepted or retained such overpayments; and (4) the circumstances are such that it would be inequitable for Lincoln to retain the overpayments without paying fair value for it. "[A]lternate pleading allows for a plaintiff's case to proceed in the face of uncertainty as to the existence of a contract or, perhaps, uncertainty as to whether the particular issue at hands falls within the ambit of a contract that otherwise exists between the parties." *D.H.G. Properties, LLC* 2010 WL 5584464 *11 (citing *Donnelly v. Circuit City Stores, Inc.*, 2007 WL 896337, at *3 (M.D. Fla. Mar. 22, 2007)). On the other hand, the first part of Raven's claim regarding Lincoln's acceptance of premium payments and failure to pay the benefits due thereunder is clearly governed by the Second Contract. As such, Raven cannot recover such payments on the basis of a claim for unjust enrichment. Since the effectiveness of the Disability Rider between execution of the Second Contract and the Disability Rider's termination is not proven and since Raven has otherwise plead sufficient factual matter, accepted as true, to state a plausible claim for unjust enrichment with respect to premium overcharges, it would be premature to dismiss this claim at this stage of the litigation. Accordingly, this Court DENIES Lincoln's Motion to Dismiss as circumscribed herein with respect to Raven's Count III.

(e) *Promissory Estoppel (Count IV)*

Also in the alternative, Raven seeks damages on the equitable theory of promissory estoppel based on the affirmative representations of Lincoln's agents, upon which Raven relied, that Raven could stop making premium payments under the Second Contract. To state a claim

for promissory estoppel, a plaintiff must plead: (1) promises that are definite and substantial in nature; (2) justifiable reliance on the promises made; and (3) detrimental reliance on such promises.  *See Eclipse Medical, Inc. v. American Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1349, FN 7 (S.D. Fla. 1999).

As a threshold matter, the general rule cited in the unjust enrichment section is also applicable to promissory estoppel.  *Williams v. Bear Stearns & Co.*, 725 So.2d 397, 400 (Fla. 5th DCA 1998) ("It is only upon a showing that an express contract exists that the unjust enrichment or promissory estoppel count fails . . . [u]ntil an express contract is proven, a motion to dismiss a claim for promissory estoppel or unjust enrichment on these grounds is premature."). While the Second Contract itself is undisputed, "alternate pleading allows for a plaintiff's case to proceed in the face of uncertainty . . . as to whether the particular issue at hands falls within the ambit of a contract that otherwise exists between the parties."  *D.H.G. Properties, LLC* 2010 WL 5584464 *11 (citing *Donnelly v. Circuit City Stores, Inc.*, 2007 WL 896337, at *3 (M.D. Fla. Mar. 22, 2007)).  Although Lincoln's agent could not modify the Second Contract through an oral statement, the Second Contract does not address the effect of an agent's affirmative misrepresentation regarding its content.  Thus, it would be premature in this case to dismiss Raven's promissory estoppel claim where the alleged misrepresentation of Lincoln's agent was purportedly outside the ambit of the Second Contract.  Lincoln would need to prove in the next stage of the litigation that the misrepresentation was governed by the Second Contract.  Moreover, Raven has plead sufficient factual matter, accepted as true, to state a claim for promissory estoppel:  (1) Lincoln's agent made a definite and substantial promise that Raven and the Insured could stop making premium payments under the Second Contract; (2) Raven and the Insured relied upon this promise by stopping their premium payments; and (3) this induced Raven and Insured to lose all benefits under the Second Contract.  Accordingly, this Court DENIES Lincoln's Motion to Dismiss with respect to Raven's Count IV.

**III.     CONCLUSION**

For the reasons set forth above, Lincoln's Motion to Dismiss is DENIED with respect to each Count as circumscribed above.

DONE AND ORDERED in Chambers, Miami, Florida, November 15, 2011.

_____
Paul C. Huck
United States District Judge

Copies furnished to:
All counsel of record